UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SOUTHREST, INC., a Washington corporation, dba The Woodmark,<br><br>Plaintiff,<br><br>v.<br><br>HYATT HOTELS CORPORATION, a Delaware corporation; CORALTREE HOSPITALITY GROUP LLC, a California limited liability company,<br><br>Defendants. | Civil Action No. 2:19-cv-486<br><br>**COMPLAINT**<br>**(Declaratory Judgment Pursuant to 28 USC § 2201)** |

Plaintiff Southrest, Inc., dba The Woodmark ("The Woodmark"), alleges as follows:

**INTRODUCTION**

1. This action seeks a declaration and temporary and preliminary injunctive relief to protect The Woodmark from immediate, irreparable injury that will be caused if Hyatt Hotels Corporation ("Hyatt") is permitted to take control of certain critical management services and rebrand The Woodmark as a Hyatt property.

2. The Woodmark is an independent, luxury hotel, with a strong reputation in the lifestyle hospitality market. Years ago, The Woodmark agreed to purchase management services from a preeminent manager of independent luxury hotels and resorts, Destination Hotels and Resorts, Inc. ("Destination Hotels").

COMPLAINT (DECLARATORY JUDGMENT)   -1-
Case No. –

Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503.221.1440

3.   Recently, Destination Hotels' hotel management business was purchased by Hyatt. Immediately thereafter, Hyatt began trying to force The Woodmark to accept management services from Hyatt.

4.   Hyatt's intention is to collapse the Destination Hotels brand, which will culminate in rebranding The Woodmark as a Hyatt property. Because The Woodmark brand is incompatible with the Hyatt brand, this would cause The Woodmark to suffer immediate, irreparable injuries.

5.   Hyatt has also permitted a competitor, CoralTree Hospitality Group LLC ("CoralTree"), to take possession and control over The Woodmark's confidential and proprietary information and intellectual property.

6.   This action seeks a declaration and temporary and preliminary injunctive relief to maintain the status quo during an adjudication of the parties' respective rights and obligations under the Hotel Management Agreement (the "HMA") between The Woodmark and Destination Hotels. It further seeks to enjoin Hyatt and CoralTree from possessing and using The Woodmark's confidential and proprietary information and intellectual property.

7.   Disputes arising under the HMA will be resolved in arbitration.

**PARTIES**

8.   Plaintiff Southrest, Inc. is incorporated under the laws of Washington with its principal place of business in Kirkland, Washington. Plaintiff is doing business as The Woodmark.

9.   Defendant Hyatt Hotels Corporation is a Delaware corporation with its principal place of business in Chicago, Illinois.

10.   Defendant CoralTree Hospitality Group LLC is a California limited liability company with its principal place of business in Denver, Colorado.

**JURISDICTION AND VENUE**

11.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The citizenship of the parties is diverse and the amount in controversy exceeds $75,000.

COMPLAINT (DECLARATORY JUDGMENT)   -2-
Case No. –

Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon  97204
503.221.1440

12. Venue is proper in the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1391.

13. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

### (Carillon Point)

14. Carillon Point is an upscale, iconic, multi-use business development on the shore of Lake Washington. The development was carefully designed to provide a modern workplace environment, loaded with upscale lifestyle services and amenities, for one of the country's hottest high-tech and venture capital growth communities. Some of the country's most affluent individuals and innovative companies do business at Carillon Point. Deals that make global news occur at Carillon Point.

15. Carillon Point includes a first-class marina, an opulent day spa, a luxury boutique hotel, and some of the area's finest restaurants, casual dining, coffee bars, boutiques and gift shops. Tenants and guests enjoy a carefully orchestrated environment, which balances a casual atmosphere with world-class style. For example, the shoreline trail, which is well-used by tenants and guests, is accented by a restored salmon stream, manicured gardens and sculpture art.

### (The Woodmark)

16. The Woodmark, or "the Woody," is a small, luxury hotel located within the Carillon Point complex. In many ways, The Woodmark is the centerpiece of the campus. Carillon Point's tenants and guests enjoy the many upscale amenities and services provided by the hotel and its attendant businesses.

17. Like Carillon Point, The Woodmark was carefully designed to cater to an affluent business clientele. For over 30 years, The Woodmark has endeavored to provide its guests with a unique experience, based on local authenticity. The goal is for guests to feel privileged to frequent an independent establishment designed to showcase the local community and environment.

18. The Woodmark's steadfast commitment to independence and community has earned it a strong reputation in the upscale lifestyle hospitality market.

**(Destination Hotels)**

19. Destination Hotels is a hospitality management company that oversees a collection of independent, luxury hotels and resorts. Destination Hotels describes itself as follows:

> AT OUR CORE, we represent a different kind of brand in the hospitality industry. One that believes in independence over sameness. One that delivers local authenticity of experience versus a sea of sameness. One that truly champions the individuality of its properties. We celebrate our distinctive and diverse collection of luxury and upscale independent hotels as the leading stars in our collective story. We are building a brand to inspire how those around us feel. One that influences how they behave. And most of all, one that compels them to partner with us, work with us, and stay with us again and again.
>
> THE DESTINATION HOTELS EXPERIENCE is highly distinct and always memorable. You'll feel the location in a genuine way throughout each of our properties, and during the engaging experiences we help curate, both in and outside of them. And while we like to keep things fresh and exciting, we also know that you want your hotel to feel warm and inviting, so you can come as you are—whether at work or play—and make our destination yours.
>
> WE SEE EVERY HOTEL AS A GATEWAY to experience a new destination. That's why we offer a diverse collection of refined hotels and resorts that are individual at heart, yet connected by a commitment to drawing upon the best of each location. Always true to our place, our unique properties are in harmony with their surroundings, shaped by the local culture. With over 40 properties from coast to coast our award-winning portfolio features 20 renowned golf courses, 19 indigenous spas and 105 exceptional bars and restaurants. Through our deep community ties and human relationships, we offer an intimate knowledge of place, and a warm invitation to stay with us and experience genuine discovery. Discover for yourself today what genuine and true hospitality is at Destination Hotels.
>
> Destination Hotels are true to our place; diverse by design.

**(The Management Services Agreement)**

20. Barbara Leland ("Leland") is the General Manager of Carillon Point. She is responsible for overseeing the development's commercial office spaces and executive suites, apartments, retail establishments, restaurants, hotel, spa, and marina.

COMPLAINT (DECLARATORY JUDGMENT)            -4-
Case No. –

Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503.221.1440

21.     In or about 2011, Leland began a search for a hospitality management company that could help The Woodmark grow its hotel revenues and assist with the "back-office" work of the hotel's critical systems and platforms. She investigated and interviewed many companies. Her goal was to identify a strategic partner with deep expertise managing independent, luxury hotels and resorts. In addition, she sought a company that shared The Woodmark's core values: honesty, humility, courtesy, compassion and respect.

22.     During her search, Leland met Tom Luersen, District Manager for Destination Hotels. Destination Hotels is a hotel management company owned by Lowe Enterprises Inc., a massive real estate investment and development company responsible for managing over $20 billion in assets.

23.     Luersen explained that Destination Hotels is a Colorado-based company with deep expertise managing independent, luxury hotels. He explained that Destination Hotels had developed a portfolio of independent, luxury hotels and resorts located on beaches and in mountains and cities across the country. Luersen emphasized that The Woodmark was a natural fit for his company. As a part of his pitch, Luersen compared the Destination Hotels' properties to those managed by large brands, such as Hyatt, Hilton and Marriott. His words about branded hotels were not kind. He described them as sterile and cookie-cutter. Luersen explained that Destination Hotels were very different—they are premised on independence and uniqueness. Luersen further also emphasized that the work of managing independent luxury properties is very different from managing hotel chains.

24.     Leland agreed with Luersen's comments, and made clear that Carillon Point would never allow its hotel to become associated with a large hotel chain—such an association would severely injure the Carillon Point and The Woodmark brands. Leland told Luersen that the affluent and sophisticated business community residing at and frequenting Carillon Point and The Woodmark would not welcome the sterile atmosphere common in hotel chains.

25.     Luersen also told Leland that Destination Hotels and Carillon Point shared core values. He described a family-like atmosphere at Destination Hotels, based on honesty, respect and

trust. Leland and Luersen decided to do business together—The Woodmark decided to buy management services from Destination Hotels.

26. Leland negotiated a Hotel Management Agreement (the "HMA") with Luersen and the CFO of Destination Hotels, Kathleen McIntee. The parties to the HMA are Carillon Properties (the owner of The Woodmark), a Washington general partnership, and Destination Kirkland Management, Inc. ("DKM"), a Washington corporation and wholly-owned subsidiary of Destination Hotels. DKM exists on paper only. It was organized for the purpose of signing the HMA only. DKM has no employees, and provides no management services. Destination Hotels—DKM's affiliate—performed all services outlined in the HMA, as the parties intended.

27. Destination Hotels provided the initial draft of the HMA, which was based on the template used for other hotels in its portfolio. The original version of the provisions – drafted by Destination Hotels – gave Destination Hotels almost complete ability to sell its contractual rights and duties to a third party:

> Manager may assign from time to time this Agreement and its rights and interests hereunder to any successor or assignee of Manager resulting from any merger, consolidation of reorganization with, or any sale or assignment to, any party or parties acquiring all or substantially all of the hotel management business of Manager or any of its Affiliates. Manager may also assign from time to time this Agreement and its rights and interests hereunder to any of its Affiliate or as a collateral assignment to the applicable lender(s) for any existing or future indebtedness of Manager or any of its Affiliates. Any such assignee shall agree to be bound by the terms and conditions of this Agreement. Upon any such permitted assignment and assumption, the assignor shall have no further obligation or liability to Owner as Manager hereunder with respect to Manager's obligations arising from and after the date of such assignment, and all such obligations and liabilities of Manager hereunder shall be and become solely those of the assignee. Except as hereinabove provided, Manager shall not assign or in any manner sell or transfer any of its rights and interests as Manager hereunder without the prior written consent of Owner.

This was unacceptable to The Woodmark. During negotiations, The Woodmark insisted on changes limiting the ability to assign the contract. Destination Hotels agreed.

COMPLAINT (DECLARATORY JUDGMENT)  -6-
Case No. –

Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503.221.1440

28.     Many material edits were made to the form.  The most significant change to the form HMA involves the inclusion of a broad assignment provision that prevented Destination Hotels from assigning its rights and interests under the HMA without Woodmark's prior written consent.  Section 14.3 of the HMA provides:

> Manager may assign from time to time this Agreement and its rights and interests hereunder subject to Owner's prior written consent, which may be withheld in Owner's sole discretion, to any successor or assignee of Manager resulting from any merger, consolidation or reorganization with, or any sale or assignment to, any party or parties acquiring all or substantially all of the hotel management business of Manager.  Manager may also assign from time to time this Agreement and its rights and interests hereunder without Owner's prior written consent to any of its Affiliate or as a collateral assignment to the applicable lenders(s) for any existing or future indebtedness of Manager or any of its Affiliates.  Any such assignee shall agree to be bound by the terms and conditions of this Agreement.  Upon any such permitted assignment and assumption, the assignor shall have no further obligation or liability to Owner as Manager hereunder with respect to Manager's obligations arising from and after the date of such assignment, and all such obligations and liabilities of Manager hereunder shall be and become solely those of the assignee.  Except as hereinabove provided, Manager shall not assign or in any manner sell or transfer any of its rights and interests as Manager hereunder without the prior written consent of Owner.

29.     The reason this edit was included was because Leland was adamant that The Woodmark could never become associated with a hotel chain.  She knew and expressed to Luersen that the Carillon Point and The Woodmark brands are not compatible with hotel chain brands.  Luersen expressed understanding and agreement with this point.  The revised text of Section 14.3, which is set forth above, was included for the purpose of protecting The Woodmark from the possibility of ever becoming associated with a hotel chain.

30.     The intent of The Woodmark and Destination Hotels, as expressed in Section 14.3, and which is clear from scrutiny of drafts of that provision, is to protect The Woodmark from being forced to become associated with a hotel chain.

31.     A key benefit for The Woodmark that came with a relationship with Destination Hotels is access to cooperative marketing with the Destination Hotels collection of hotels and

COMPLAINT (DECLARATORY JUDGMENT)  -7-
Case No. –

Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon  97204
503.221.1440

resorts. These hotels are often referred to as the "Destination Portfolio Hotels." In a nutshell, the Destination Portfolio Hotels agreed to contribute to collective marketing materials and programs, and to cross-sell to customers.

**(A Successful Relationship)**

32. Destination Hotels delivered what Luersen promised. Working closely with Destination Hotels and the Destination Portfolio Hotels, The Woodmark grew revenues and improved critical services and systems. By all accounts, the HMA was a terrific success.

33. In January 2016, a good relationship got even better. Destination Hotels merged with Commune Hotels & Resorts ("Commune"), which is a preeminent, international lifestyle hotel management company. Like Destination Hotels, Commune operates independent luxury hotels. Destination Hotels and Commune operate in highly complementary markets, with little overlap. Commune manages properties located in urban settings across North America, Asia and Europe, while Destination Hotels is focused on resort properties in premiere locations from coast to coast. Together, the companies managed nearly over 100 luxury hotels and resorts located across the globe. Because the existing customer base for each company is also complementary, each company obtained immediate access to new customers focused on the upscale, independent lifestyle market.

34. The Woodmark welcomed the merger of Destination Hotels and Commune. The combination of the companies would allow for a larger sales, marketing and revenue management platform and distribution system, which would lead to enhanced revenues and performance for the Destination Portfolio Hotels, including The Woodmark. Importantly, despite the merger, The Woodmark continued to receive management services from Destination Hotels, on familiar Destination Hotels systems and platforms, managed by experienced Destination Hotels' personnel.

35. In April 2016, as the initial term of the HMA expired, The Woodmark was delighted by Destination Hotels' performance under the HMA, and excited about the addition of the Commune properties. The Woodmark was confident that its future with Destination Hotels was bright. Consequently, The Woodmark agreed to a lengthy extension of the HMA.

COMPLAINT (DECLARATORY JUDGMENT)   -8-
Case No. –

Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503.221.1440

36. As expected, the merger was a success. Destination Hotels became a bigger, stronger company. The Woodmark obtained enhanced services from its business partner, Destination Hotels.

**(Hyatt Takes Over)**

37. On December 4, 2018, Hyatt purchased Two Roads Hospitality ("Two Roads"), which is the name used by the merged Destination Hotels and Commune. Under the deal, which had a whopping total purchase price of $600 million, Hyatt added approximately 85 properties to its portfolio, and obtained another 35 hotels in the development pipeline.

38. On the same day that Two Roads changed hands, Lowe Enterprises Inc. launched CoralTree. This was necessary because, for one reason or another, 17 properties in the Destination Hotel Portfolio were not a part of the Hyatt acquisition. Therefore, Lowe Enterprises Inc. had to create a new company to provide the management services previously provided by Destination Hotels.

39. The parallels between CoralTree and Destination Hotels are remarkable. Most of the Destination Hotels executive management team now resides at CoralTree. In fact, CoralTree's CEO, Thomas Luersen, was an executive at Destination Hotels for nearly 20 years.

40. In industry publications, Luersen has explained CoralTree's philosophy, which is strikingly similar to the Destination Hotels philosophy Luersen described to Leland years before:

> The diversity of the portfolio that [Destination Hotels] had is much like what you will see at CoralTree. These hotels offer an experience that is not standard, not cookie cutter, and has been customized from the guest's standpoint.

41. Soon after the Two Roads acquisition, Hyatt contacted the Destination Portfolio Hotels and explained that services previously performed by Destination Hotels would soon be provided by Hyatt. To accomplish this, critical management systems utilized by Destination Hotels would be transitioned over to proprietary Hyatt systems.

COMPLAINT (DECLARATORY JUDGMENT)  -9-
Case No. –

Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503.221.1440

42.     In short, through the Two Roads acquisition, Hyatt purchased substantially all of Destination Hotel's hotel management business and operations. It then decided to shut down Destination Hotel's business and operations in favor of its own proprietary systems and platforms.

43.     In response to Hyatt's comments and actions, The Woodmark immediately objected. Leland contacted Hyatt executives and explained that The Woodmark does not and will not consent to an assignment of Destination Hotel's rights and interests under the HMA to Hyatt.

44.     Conversations between The Woodmark and Hyatt ensued over the next several weeks. During this time period, Hyatt agreed that it would not transition The Woodmark's business systems to Hyatt while conversations between the parties continued. In short, Hyatt agreed to maintain the status quo.

**(Hyatt Has Injured The Woodmark)**

45.     Hyatt's sole purpose of continuing the dialogue with The Woodmark was to convince The Woodmark to accept the Hyatt brand. The Woodmark was not convinced. Frustrated, Hyatt changed course. It began changes to the Destination Resort systems and platforms that caused injury to The Woodmark.

46.     Recently, without The Woodmark's agreement or consent, Hyatt has taken control of Destination Hotels' systems, vendor relationships, website and email communications platform. Hyatt has replaced some of Destination Hotels' vendor programs and has announced plans to migrate some of the Destination Portfolio Hotels to Hyatt platforms, including re-branding these Destination Portfolio Hotels as Hyatt hotels.

47.     Hyatt has already interfered with The Woodmark's use of the following property and programs that are essential to its operations:

    a.     **Kenexa**. Without notice to The Woodmark, Hyatt disabled The Woodmark's use of the Kenexa human resources program that operated as The Woodmark's recruiting and background screening system. Destination Hotels' website does not now post any open positions for the Woodmark. For several weeks, The Woodmark has had no ability to post jobs and screen candidates.

b. **CVent**. CVent is a critical website that is a customer-facing system The Woodmark has used for years, which allows meeting planners who are booking groups, catering and social events to send critical revenue leads direct to The Woodmark. The Woodmark directly negotiated the contract with CVent and paid for the service. Destination Hotels was not a party to this agreement. However, Hyatt directed CVent to migrate this service account to Hyatt as of March 8, 2019. As a result, CVent has attempted to require a Hyatt user I.D. and password to access this account. While CVent has not yet required a Hyatt I.D. and password, it does identify The Woodmark as a Hyatt hotel. This false affiliation with Hyatt has caused The Woodmark harm in the form of lost good will and revenue that will require time and significant expense to mitigate.

c. **Email Systems**. The Woodmark was incorporated into Destination Hotels' email account in early 2017. Hyatt intends to disable the Destination Hotels' email account as of March 31, 2019. As a result, The Woodmark will not have access to its email archives and its customers will not have direct email access to The Woodmark. In addition, The Woodmark uses Microsoft Outlook 365 email system for internal email communication. In addition to permitting remote access to The Woodmark's data, it stores The Woodmark employees' archival communications that are now controlled by Hyatt, which it has refused to release.

d. **Delphi**. Delphi is a mission critical sales software system that tracks all customer contacts, prior group, catering and event bookings over a 10+ year history. Every member of The Woodmark's Sales team utilizes this platform daily. It provides access to The Woodmark's historical customer base and prior bookings. It stores critical information that informs future contracts for revenue generation. Hyatt intends to terminate The Woodmark's access to the Delphi system and replace it with Hyatt's own proprietary system. However, Hyatt has not disclosed whether it can or will migrate The Woodmark's historical data from the Delphi system to its proprietary system. Even if it is possible to migrate this data to Hyatt's system, that process may take weeks or months to accomplish. The Woodmark will be irreparably harmed if it has no access to this information.

e. **Inntopia**. This system is proprietary to The Woodmark. It is segmented into Still Spa, Hotel, Beach Café, Bin on the Lake, Carillon Kitchen and Social Cateria lists used to generate business through email reach outs. Inntopia also handles pre- and post-guest contacts for each stay a guest reserves with us. Hyatt is disabling this system, yet Hyatt has not explained how The Woodmark will be able to preserve the email address lists that are part of The Woodmark's revenue generation program.

f. **Sabre / Synxis GDS Chain Code Change**. This system provides a reservation booking engine on the hotel's website, as well as a Destination chain code and property level code that allows travel agencies to book corporate and leisure travel at The Woodmark. Hyatt

is dropping Sabre / Synxis as they have their own proprietary system, but Hyatt has not provided a specific date to make this change.  As a result of this change, customers will have difficulty finding The Woodmark once the Destination Hotels' chain code and The Woodmark's property level code is turned off.  The Woodmark will expend significant time and money to re-establish its connection to the Sabre system.

    g.    **RevIntel room night and revenue data system**.  RevIntel provides both historical and forward looking data reports for all room night production and revenue.  Hyatt intends to migrate The Woodmark's data to Hyatt's proprietary system.  That information is confidential and proprietary to The Woodmark.  Hyatt may have given CoralTree control of the RevIntel system and data reports.  As a result, CoralTree may have access to and a motivation to use The Woodmark's data because it is now a The Woodmark competitor.

    h.    **Lanyon system**.  This system permits The Woodmark to submit and respond to corporate accounts' annual RFP processes seeking annual pricing proposals.  Hyatt will have access to proprietary and confidential RFP communication that is directed to The Woodmark.  Hyatt is in the process of turning this system off, which will prevent The Woodmark from responding to critical/high volume RFP proposals.

    i.    **IDEAS, Birchstreet, and Oracle stored data**.  Each of these systems store The Woodmark's critical business operation data.  Hyatt has exercised control over these systems and has prevented The Woodmark from accessing the data in these systems.  Hyatt may have provided CoralTree access to this information.

48.    The Woodmark has suffered and will continue to suffer irreparable harm if Hyatt is permitted to exercise its improper control to eliminate or modify the mission critical systems listed above.  Hyatt has already taken steps that have interfered with The Woodmark's operation and either restricted or eliminated The Woodmark's access to data that is essential to its operation.

49.    Worst of all, Hyatt intends to impose its own brand on The Woodmark.  This would be a disaster.  The Hyatt brand does not represent the same upscale, exclusive, and independent identity that characterizes the Destination Portfolio Hotels.  Indeed, Hyatt already operates 12 hotels in the Seattle metropolitan area, including a hotel on Lake Washington near The Woodmark.  The Woodmark will suffer irreparable harm if the Hyatt is permitted to impose its brand on The Woodmark.

COMPLAINT (DECLARATORY JUDGMENT)  
Case No. –

-12-

Tonkon Torp LLP  
888 SW Fifth Avenue, Suite 1600  
Portland, Oregon  97204  
503.221.1440

**(Interference By CoralTree)**

50. As set forth above, CoralTree is a hospitality management company organized by Lowe Enterprises Inc. to provide management services to independent, luxury hotels. CoralTree has no relationship or affiliation with The Woodmark. CoralTree manages a suite of hotels that compete directly against The Woodmark.

51. Hyatt has caused The Woodmark's confidential and proprietary information and business records to come into the possession and control of CoralTree. For example, soon after Hyatt acquired Two Roads, Hyatt permitted CoralTree to gain control over the Dash accounting system, which was previously controlled by Destination Hotels. The Dash accounting system contains all of The Woodmark's confidential financial information, including all historical, current and forecasting financial data. This information can be used by a competitor such as CoralTree to injure The Woodmark's business. Similarly, Hyatt allowed CoralTree to gain control over Birchstreet automatic purchase order system, which was also previously controlled by Destination Hotels. The Birchstreet system is used to manage all of The Woodmark's purchase orders. Interference with this system by a competitor could cause severe injuries to The Woodmark.

52. Hyatt gave CoralTree possession and control over The Woodmark's intellectual property. THE WOODMARK is a registered trademark owned by Skinner Development Company, an affiliate of Carillon Properties. Upon learning about Hyatt's acquisition of Destination Hotels, The Woodmark demanded that Hyatt transfer the www.thewoodmark.com URL back to The Woodmark's Go Daddy account from Destination Hotels' Go Daddy account. Without notice to The Woodmark and without The Woodmark's consent, Hyatt moved the www.woodmark.com URL to CoralTree's control and then back to Hyatt's control. See: https://whois.icann.org/en/lookup?name=thewoodmark.com. Hyatt has no right to use or control THE WOODMARK trademark. Its refusal to relinquish control of the www.thewoodmark.com URL is an infringement of The Woodmark's trademark rights.

COMPLAINT (DECLARATORY JUDGMENT)  -13-
Case No. –

Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503.221.1440

**(The Status Quo)**

53. Currently, to the face of the public, Destination Hotels continues to operate business as usual. Customers landing on the Destination Hotels' website can find The Woodmark, and the other Destination Portfolio Hotels.

54. Hyatt has announced its intention of collapsing the Destination Hotels' brand in favor of the Hyatt brand. The first step in this process was elimination of the Destination Hotels' email account. To this end, Hyatt terminated this account on March 30, 2019. Remarkably, Hyatt said that it will not forward emails sent to the Destination Hotels' accounts. This means that, as of March 30, The Woodmark has no ability to communicate with its customers or vendors by email. This will cause immediate irreparable injury.

55. The next step in collapsing the Destination brand is eliminating the Destination Hotels' website and booking system. Without adequate time to transport this critical system to an alternative system, The Woodmark would essentially become invisible to customers and vendors. This would be disastrous.

## CLAIM FOR RELIEF

**(Declaration – Against All Defendants)**

56. The Woodmark realleges and incorporates paragraphs 1 through 55, above.

57. This is an action for declaratory judgment pursuant to 28 USC § 2201.

58. An actual and substantial controversy exists between the parties regarding (a) their rights and legal relations under the HMA; and (b) the use and ownership of The Woodmark's proprietary information and intellectual property.

59. The Woodmark contends that it has no contractual relationship with Hyatt or CoralTree; that Hyatt and CoralTree have no rights under the HMA; that The Woodmark has no obligation to either accept hotel management services from Hyatt or pay Hyatt for such services; that Hyatt has no right to assume control of the business and operating systems under which The Woodmark operates; and that Coral Tree has no right to possess or use intellectual property and

1  proprietary business information belonging to The Woodmark, including URLs, trademarks,
2  financial information and the like.
3      60.     Hyatt contends that it has stepped into the shoes of Destination Hotels under the
4  HMA and succeeded to all rights under the contract.
5      61.     CoralTree contends that is has the right to possess and use The Woodmark's
6  intellectual property and proprietary information.
7      62.     Accordingly, a judicial declaration is necessary and appropriate at this time to
8  determine (a) the parties' respective rights and obligations, if any, under the HMA; and (b) the
9  ownership and proper use of The Woodmark's intellectual property and proprietary business
10 information.
11     63.     The Woodmark is also entitled to preliminary and permanent injunctive relief in the
12 form set forth below.
13     WHEREFORE, Plaintiff prays as follows:
14     On Plaintiff's First Claim for Relief, Plaintiff prays for a Temporary Restraining Order,
15 Preliminary Injunction and permanent injunction as follows:
16     1.     For a declaration and judgment that defendants are not parties to and have no rights
17 under the HMA; that The Woodmark is not required to accept or pay for hotel management services;
18 and that defendants have no right to possess or use URLs, copyrights or confidential business
19 information belonging to The Woodmark.
20     2.     That defendant Hyatt Hotels Corporation, its officers, agents, employees and
21 attorneys, and all other persons who are in active concert or participation with them, are enjoined,
22 directly or indirectly, from:
23     a.     Possessing or exercising control over TheWoodmark.com URL and email
24     system, from including linking TheWoodmark.com to Hyatt's website;
25     b.     Possessing or exercising control over THE WOODMARK trademark;
26

COMPLAINT (DECLARATORY JUDGMENT)   -15-   Tonkon Torp LLP
Case No. –      888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503.221.1440

   c. Transferring The Woodmark's reservation system to Hyatt's reservation system;

   d. Interfering with The Woodmark's access to its customers and customer data, reservation data, reservation services, accounting, financial, purchase order and billing services, and revenue management data, online booking platform, Sales lead and contracting system, online RFP system for key accounts;

   e. Representing to the public, including hotel industry services, that The Woodmark is affiliated with Hyatt on key meeting planner decision making sites such as CVent;

   f. Migrating any of The Woodmark's current operational and/or business systems to systems provided by Hyatt; and

   g. Using, disclosing, or transferring to any other person (including CoralTree) The Woodmark's confidential, proprietary, and/or trade secret information or interfering with The Woodmark's access to such information.

 3. That defendant CoralTree Hospitality Group LLC, its officers, agents, employees and attorneys, and all other persons who are in active concert or participation with them, are enjoined, directly or indirectly, from:

   a. Accessing, using, disclosing, or transferring to any person The Woodmark's confidential, proprietary, and/or confidential trade secret information;

   b. Possessing or exercising control over THE WOODMARK trademark or TheWoodmark.com URL;

   c. Representing to the public, including hotel industry services, that The Woodmark is affiliated with CoralTree or Hyatt;

   d. Demanding accounting information from The Woodmark or payment from The Woodmark; and

COMPLAINT (DECLARATORY JUDGMENT) -16-
Case No. –

Tonkon Torp LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503.221.1440

  e. Interfering in any way with The Woodmark's ability to operate independent of services provided by Hyatt or CoralTree.

DATED this 2nd day of April, 2019.

    TONKON TORP LLP

    By *s/ Paul Conable*
     Steven D. Olson, WSBA No. 39086
      Direct Dial: 503.802.2159
      Email: steven.olson@tonkon.com
     Paul Conable, WSBA No. 43587
      Direct Dial: 503.802.2188
      Email: paul.conable@tonkon.com
     Jon P. Stride, WSBA No. 34686
      Direct Dial: 503.802.2034
      Email: jon.stride@tonkon.com

    Attorneys for Plaintiff

COMPLAINT (DECLARATORY JUDGMENT) -17- Tonkon Torp LLP
Case No. –  888 SW Fifth Avenue, Suite 1600
  Portland, Oregon  97204
  503.221.1440

# CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

I further certify that on the above date, I served the forgoing document on the parties listed below via the service indicated:

Matthew W. Walch (**via U.S. Mail and email service**)
matthew.walch@lw.com
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
  Attorneys for Defendant Hyatt Hotels Corporation

Callie A. Bjurstrom (**via U.S. mail and email service**)
callie.bjurstrom@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
501 West Broadway, Suite 1100
San Diego, CA 92101

  Attorneys for Defendant CoralTree Hospitality Group LLC

DATED this 2nd day of April, 2019.

       TONKON TORP LLP

       By *s/ Paul Conable*
        Steven D. Olson, WSBA No. 39086
        Paul Conable, WSBA No. 43587
        Jon P. Stride, WSBA No. 34686

       Attorneys for Plaintiff

040483/00001/9805109v1